222 P.3d 909

**In re the Marriage of Connie Dale PULLEN, Petitioner/Appellee,**

v.

**Arthur Harlan PULLEN III, Respondent/Appellant.**

**No. 1 CA–CV 08–0818.**

Court of Appeals of Arizona, Division 1, Department E.

Dec. 24, 2009.

Connie Dale Pullen, Golden Valley, In Propria Persona.

Law Offices of Keith S. Knochel, P.C. by Aline K. Knochel, Bullhead City, Attorneys for Appellant.

## OPINION

KESSLER, Judge.

¶ 1 Arthur Harlan Pullen, III ("Husband") appeals the trial court's dissolution decree and denial of his motion for a new trial. Husband argues: (1) the court applied an incorrect legal standard for attributing income to him in excess of his actual current income for purposes of determining spousal maintenance; and (2) there was insufficient evidence to hold that he voluntarily reduced his earning capacity and was voluntarily underemployed. We hold the court considered the appropriate factors for attributing to Husband his prior income in determining spousal maintenance and there was evidence

supporting that holding. Accordingly, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 Husband and Connie Dale Pullen ("Wife") were married in 1978. After 29 years of marriage, Wife moved out of their home and filed a petition for dissolution of marriage. In that petition, Wife requested an award of spousal maintenance. Wife also obtained an order of protection against Husband.

¶ 3 Wife was unemployed when she filed the petition for dissolution, but at the time of trial was working for the Kingman Unified School District as a special education teaching assistant. In that position, Wife made $9.02 an hour, or $12,191.00 annually, for a nine month position. She was also taking classes to obtain a teaching certification in special education.

¶ 4 Prior to trial, Husband was a commercial truck driver for Federal Express Freight ("FedEx") in Kingman and made $64,988.00 annually. Several months after Wife filed her petition for dissolution, Husband voluntarily ended his employment at FedEx and moved to Washington. At the time of trial, Husband was employed as a commercial truck driver by Evergreen Building Products in Port Townsend, Washington, making $15 an hour.

¶ 5 Husband testified that he left Kingman because he had been accused of violating the restraining order against him and wanted to avoid further problems. Husband also testified that he chose to move to Port Townsend because he had lived there previously and had a girlfriend there with whom he planned on pursuing a relationship. He chose Washington despite the fact FedEx would not transfer him there, but would have transferred him to other locations. Husband asserted that he had difficulty finding a position in Port Townsend due to the economy, and thus accepted the job at Evergreen Building Products in spite of the decrease in salary.

¶ 6 The court determined that Wife met the criteria under Arizona Revised Statutes ("A.R.S.") section 25–319(A)(2007) for an award of maintenance. The court also found that Husband had left his employment with FedEx for personal reasons during the divorce proceedings. The court attributed to Husband his previous income and determined that Wife was entitled to spousal maintenance of $1000 per month for a period of ten years, beginning on July 1, 2008.

¶ 7 Husband filed a motion for a new trial on August 7, 2008. The trial court denied the motion by an unsigned minute order on September 11, 2008 and by a signed order on October 14, 2008. Husband timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

### DISCUSSION

¶ 8 Husband argues that the trial court erred both in the decree and in the order denying his motion for new trial by attributing his prior income to him for determining maintenance.[1] Husband contends that the court applied an incorrect legal standard for attributing income to him and the evidence did not support the finding that he was voluntarily underemployed. He argues that the court did not consider evidence of his motivation for relocating to a new market area and his good faith attempt to secure comparable employment during the dissolution action.

¶ 9 We review whether a court can attribute greater income to a party de novo, because it is an issue of law. *Hall v. Lalli,* 194 Ariz. 54, 57, ¶ 5, 977 P.2d 776, 779 (1999) (questions of law are reviewed de novo); *Gerow v. Covill,* 192 Ariz. 9, 14, ¶ 19, 960 P.2d 55, 60 (App.1998). Questions of what factors to apply to attribute income are legal questions. *Gambill v. Gambill,* 137 P.3d 685, 688, ¶ 7 (Okla.Civ.App.2006) (whether government benefits should be considered as income to wife is a legal question reviewed de novo). However, whether the trial court properly applied those factors is reviewed deferentially. *Megremis v. Megremis,* 179 N.C.App. 174, 633 S.E.2d 117, 123 (2006).

---

1. Husband does not dispute the court's finding that Wife met the criteria pursuant to A.R.S. § 25–319(A) and was entitled to spousal maintenance.

*Cf. Chen v. Warner,* 280 Wis.2d 344, 695 N.W.2d 758, 780, ¶ 43 (2005) (whether spouse unreasonably terminated employment is question of law, but because it is tied so closely to factual findings, appellate court should give appropriate deference to trial court's ruling). *Accord Van Offeren v. Van Offeren,* 173 Wis.2d 482, 496 N.W.2d 660, 663–64 (App.1992). Whether sufficient evidence supported the court in application of the test is reviewed only for clear error. *Kelsey v. Kelsey,* 186 Ariz. 49, 51, 918 P.2d 1067, 1069 (App.1996).[2]

■■■ ¶ 10 The trial court has broad discretion in deciding whether to grant or deny a motion for a new trial, *Melcher v. Melcher,* 137 Ariz. 210, 212, 669 P.2d 987, 989 (App. 1983), and "we will not overturn that decision absent a clear abuse of discretion." *Delbridge v. Salt River Project Agric. Improvement & Power Dist.,* 182 Ariz. 46, 53, 893 P.2d 46, 53 (App.1994). We review orders denying motions for new trial for an abuse of discretion; a court abuses its discretion if, in reaching its decision, it applies an erroneous rule of law. *Twin City Fire Ins. Co. v. Burke,* 204 Ariz. 251, 254, ¶ 10, 63 P.3d 282, 285 (2003); *Martinez v. Binsfield,* 195 Ariz. 446, 449–50, ¶ 11, 990 P.2d 647, 650–51 (App. 1999), *vacated on other grounds,* 196 Ariz. 466, 999 P.2d 810 (2000). The burden is upon the party seeking to overturn the trial court's denial of a motion for a new trial to show that the trial court abused its discretion. *Delbridge,* 182 Ariz. at 53, 893 P.2d at 53.

## I. Attribution of Income

■■ ¶ 11 Husband first argues that the court applied an incorrect legal standard for attributing income to him in excess of his current income. He contends that the court should not have attributed his prior income to him because he made a good faith attempt to secure "sufficiently adequate and compa-

rable employment in relocating to a new market area and obtaining new employment with dramatically lower wages amidst the dissolution action." We disagree.

¶ 12 In *Little v. Little,* 193 Ariz. 518, 522, ¶ 11, 975 P.2d 108, 112 (1999), the Arizona Supreme Court adopted an intermediate balancing test to determine whether to use actual income or earning capacity to calculate child support when a parent voluntary reduces his or her income. The intermediate test mandates balancing a number of factors. *Little,* 193 Ariz. at 522, ¶ 12, 975 P.2d at 112.[3] *Accord McNutt v. McNutt,* 203 Ariz. 28, 33, ¶ 20, 49 P.3d 300, 305 (App.2002) (stating the *Little* balancing test should apply when obligor accepts lower paying employment).

¶ 13 In adopting the intermediate test, the *Little* court expressly rejected both the good faith test, which Husband argues should be applied, and a strict rule test. It identified three fundamental flaws with the good faith test: (1) The good faith test erroneously assumes that a divorced or separated party to a support proceeding will continue to make decisions in the best interest of the family unit, when often the party will not do so; (2) It fails to give enough weight to the support obligation involved; and (3) The test by its very nature has a built-in bias in favor of finding good faith to exist. *Little,* 193 Ariz. at 521–22, ¶ 9, 975 P.2d at 111–12. The court also rejected the strict rule test as too inflexible because a reduction of income resulting from a voluntary act of a party is disregarded and the court considers only one factor, the party's earning capacity. *Id.*

¶ 14 No published decision in Arizona has applied *Little* to attribute income for spousal maintenance purposes. Nor can we rely on *Little* to delineate what factors to balance if we adopted an intermediate test because *Little* focused on the need of the child for child support. However, many other jurisdictions have treated child support and spousal main-

---

2. We can infer additional findings of fact sufficient "to sustain the trial court's order as long as those findings are reasonably supported by the evidence, and not in conflict with any express findings." *Johnson v. Elson,* 192 Ariz. 486, 489, ¶ 11, 967 P.2d 1022, 1025 (App.1998).

3. Those nonexclusive factors are the financial impact of the parent's decision on the child or children the support order protects, the overall reasonableness of the parent's voluntary decision and whether the parent's decision was made in good faith or to avoid a child support obligation. *Little,* 193 Ariz. at 522–23, ¶¶ 12–14, 975 P.2d at 112–13.

tenance similarly when voluntary reduction of income issues are raised. *See* Lewis Becker, *Spousal and Child Support and the "Voluntary Reduction of Income" Doctrine,* 29 Conn. L.Rev. 647, 722–23 (1997) (citing *In re Marriage of Ilas,* 12 Cal.App.4th 1630, 16 Cal.Rptr.2d 345, 350 (1993); *Cushman v. Cushman,* 585 So.2d 485, 486 (Fla.Dist.Ct. App.1991); *Cochran v. Cochran,* 14 Va.App. 827, 419 S.E.2d 419, 420–21 (1992); *Van Offeren,* 496 N.W.2d at 664–66). We agree with those authorities and conclude the reasoning of the court in *Little,* to apply an intermediate balancing test, equally applies in the spousal maintenance context.

¶ 15 The next question is what factors should be balanced. One commentator has proposed the intermediate test should be composed of five factors: (1) The reasons asserted by the party whose conduct is at issue; (2) The impact upon the obligee of considering the actual earnings of the obligor; (3) When the obligee's conduct is at issue, the impact upon the obligor of considering the actual earnings of the obligee and thereby reducing the obligor's financial contribution to the support order at issue; (4) Whether the party complaining of a voluntary reduction in income acquiesced in the conduct of the other party; and (5) The timing of the action in question in relation to the entering of a decree or the execution of a written agreement between the parties. *Becker,* 29 Conn. L.Rev. at 675–76 (1997).

¶ 16 A number of courts have adopted some or all of these factors in developing the intermediate balancing test. *McHale v. McHale,* 612 So.2d 969, 973 (La.Ct.App.1993) (voluntary change in income must be reasonable and justified, not intended to avoid obligation and must not deprive child of reasonable support); *Cochran,* 419 S.E.2d at 421 (courts should consider previous history of employment, occupational qualifications, extent parent is underemployed in primary job, health of the individual, needs of the family and all other circumstances); *Kelley v. Kelley,* 324 S.C. 481, 477 S.E.2d 727, 730–31 (Ct.App.1996) (court should determine whether decreased income was a result of good faith and reasonable efforts of the obligor; however, even otherwise unreviewable

career choices are at times outweighed by countervailing considerations); *Schlagel v. Schlagel,* 973 So.2d 672, 675–76 (Fla.Dist.Ct. App.2008) (in imputing income, court must determine whether underemployment was result of less than diligent and bona fide efforts to find employment paying income at a level equal to or better than prior income, considering recent work history, occupational qualifications and prevailing earnings); *Cushman,* 585 So.2d at 486 (same); *In re Marriage of Ilas,* 16 Cal.Rptr.2d at 351 (earning capacity can be based on a three-part test of: (1) ability to work; (2) willingness to work as exemplified by good faith efforts, due diligence and meaningful attempts to secure employment; and (3) opportunity to work, meaning an employer who is willing to hire); *Van Offeren,* 496 N.W.2d at 663 (court may attribute earning capacity to spouse when the obligor intentionally avoids duty to support or unreasonably diminishes or terminates income in light of support obligation). As one court has put it, the ultimate test is to determine whether the decision to leave employment was voluntary and reasonable but it must be commensurate with the party's support obligations so as not to deprive the obligee of the support to which he or she is entitled. *Chen,* 695 N.W.2d at 764–65, ¶ 25.

¶ 17 Mere good faith in the sense of not changing jobs with the intent to avoid maintenance is only one factor used to determine earning capacity. *In re Marriage of Ilas,* 16 Cal.Rptr.2d at 351. Good faith in this context is not equivalent to self-interest; even an employment change made in good faith may be unreasonable in light of the maintenance obligation. *Chen,* 695 N.W.2d at 764–65, ¶ 25; *Van Offeren,* 496 N.W.2d at 665. Such a balance protects those entitled to maintenance yet also permits the obligor to reasonably choose a means of livelihood. *Van Offeren,* 496 N.W.2d at 665.

¶ 18 We conclude that balancing the five factors discussed *supra,* ¶ 15, is consistent with the reasoning in *Little.* Courts should balance these five factors in addition to other evidence in determining whether to use actual income or earning capacity to calculate

spousal maintenance when voluntary reduction of income issues are raised.[4]

▮ ¶ 19 While the trial court did not expressly consider the above listed five factors, the record supports its decision under that analysis. First, the court considered that Husband left his employment at FedEx for personal reasons, namely to move to a town where he had lived before and where his girlfriend resided. Moreover, testimony in the record shows that Husband allegedly violated the restraining order Wife had against him and had been contacted by a police officer about a summons to appear in court due to that violation. Thus, the move from Mohave County could be seen as an attempt to avoid possible criminal prosecution for the alleged violation. Second, there would be a detrimental impact upon Wife of considering the actual earnings of Husband as Wife was unable to be self-sufficient. The third factor was not relevant as Wife's conduct was not at issue. Fourth, Wife did not acquiesce to Husband's change in employment. Fifth, Husband left his employment while the divorce proceeding and request for maintenance were pending. The timing of the move could be interpreted as an attempt to lower income to avoid an award of maintenance based on Husband's prior higher income.

¶ 20 Applying these factors, we find the court analyzed the appropriate evidence in deciding to use Husband's earning capacity rather than his actual income in awarding spousal maintenance.

## II. Sufficiency of the Evidence

▮ ¶ 21 Husband argues that there was insufficient evidence to attribute his prior income to him. He contends that the evidence shows he did not make a voluntary relocation but was subject to an involuntary wage reduction so that the spousal maintenance award is excessive in light of his earned income.

▮ ¶ 22 The trial court is in the best position to properly calculate an award of spousal maintenance and is given broad discretion in determining what is a reasonable amount. *In re the Marriage of Hinkston,* 133 Ariz. 592, 593, 653 P.2d 49, 50 (App.1982); *Ruskin v. Ruskin,* 153 Ariz. 504, 507, 738 P.2d 779, 782 (1987). Absent an abuse of discretion, we will uphold the amount awarded. *Ruskin,* 153 Ariz. at 507, 738 P.2d at 782.

¶ 23 Evidence at trial showed several factors affected Husband's income and earning capacity. Husband had a commercial trucking license and he voluntarily left his employment as a commercial truck driver for FedEx, where he earned nearly $65,000 per year. Husband testified he decided to leave Kingman because of a restraining order against him and his desire to "prevent any further problems." Husband further testified that he chose Port Townsend because he had lived there previously and had a girlfriend with whom he decided "to try and make a go of things." Husband could have transferred with FedEx to a location such as Reno, Nevada or Los Angeles, California, but chose not to.

¶ 24 The court considered the above evidence relating to Husband's decision to leave his employment and move. It was within the court's discretion to find that Husband left his employment voluntarily and that the choice was unreasonable in light of Wife's pending maintenance needs. Based on the

---

4. Husband cites *Reeves v. Reeves*, stating that "the fact that one may, by a voluntary act, reduce one's income is not necessarily a ground for modification of a maintenance decree." 146 Ariz. 471, 473, 706 P.2d 1238, 1240 (App.1985). He suggests that this statement indicates there should be a case by case analysis of instances of reduced income, and that his voluntary move and taking a job at a reduced income must be examined as distinct events. *Reeves* involved a husband's intent to retire after the divorce. The trial court held that if the husband voluntarily retired before age 65, it would not be grounds to reduce his maintenance obligation. *Id.* at 472, 706 P.2d at 1239. This Court affirmed, stating that A.R.S. § 25–319(B) focuses on financial resources and abilities of an obligor spouse and that the trial court has discretion to prevent one spouse from avoiding a maintenance award by voluntarily taking himself out of the labor market when his earning power is well documented. *Id.* Thus, *Reeves* supports the view that a party may not reduce support by voluntarily reducing income. *Id.* at 472, 706 P.2d at 1239. Moreover, *Reeves* is consistent with the rejection of the strict scrutiny test in *Little* and is thus consistent with our decision today.

record, we find there is evidence that reasonably supports the court's findings.

¶ 25 Our conclusion is supported by *Ruskin.* In *Ruskin,* the court determined that a spouse who had left his employment in a public relations managerial position and moved to Arizona, as well as committed his financial resources to a luxury home and cars, voluntarily reduced his income. 153 Ariz. at 507, 738 P.2d at 782. The court emphasized these actions were made by choice, and held that the defendant could not avoid his duty to pay spousal maintenance because of them. *Id.*

¶ 26 Similar to *Ruskin,* the trial court found that Husband left his position at FedEx by choice, and did so for personal reasons. Namely, although Husband could have stayed with FedEx and maintained his income by staying in Kingman or transferring to Reno or Los Angeles, he decided to move to where his girlfriend resided. One of the consequences of this decision was that he could not find a job that paid as well as his position with FedEx. Husband contends that this result was involuntary, which may be the case, but the initial decision to leave his employment was voluntary. Because of that decision the court properly attributed to Husband his prior earning capacity. *See Van Offeren,* 496 N.W.2d at 665–66 (good faith is not equivalent to self-interest and the court will determine the reasonableness of an employment change, even made in good faith, if the change was unreasonable in light of the maintenance obligation).

¶ 27 Husband also contends that the maintenance awarded by the trial court is excessive in light of his actual earned income. Husband cites *Patterson v. Patterson,* in which the court awarded spousal maintenance based on the deceased husband's income. 102 Ariz. 410, 432 P.2d 143 (1967). In that case, the husband was an experienced physician and surgeon and he and his family were accustomed to a high standard of living. 102 Ariz. at 415, 432 P.2d at 148. The husband's income decreased several years before

his death and his estate argued that the maintenance award based on a higher prior income was excessive. The trial court denied any relief. The Arizona Supreme Court affirmed and held that when "no showing was made that [husband] lacked the ability or capacity to work, his obligation to his wife and children cannot be diminished because he preferred to be idle rather than industrious or because of his own improprieties he caused a diminution in his medical practice income." *Id.*

¶ 28 *Patterson* supports the award here because Husband chose to decrease his income shortly before the divorce trial by moving to Washington for personal reasons when he could have stayed in Kingman earning a higher income or transferred to other cities to maintain that income level. The evidence the trial court considered supported its determination of the amount and duration of spousal maintenance.

## CONCLUSION

¶ 29 We affirm the trial court's finding that Husband voluntarily reduced his income and its determination that Husband should be held accountable to his earning capacity of approximately $64,000 rather than his current wage rate.[5]

¶ 30 As the prevailing party, Wife is entitled to an award of costs incurred on appeal. We award her taxable costs on appeal upon timely filing of a statement of costs in compliance with Arizona Rule of Civil Appellate Procedure 21(c).

CONCURRING: PHILIP HALL, Presiding Judge, and PATRICIA A. OROZCO, Judge.

---

5. Husband argues the trial court also erred in denying his motion for a new trial. Husband made the same arguments in his motion for new trial that he makes in attacking the decree on

appeal. Since we find no error in the court's decree in attributing income to Husband based on his former employment, the court also did not err in denying Husband's motion for new trial.