NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LYN MAGALLANES, *Petitioner/Appellant*,

*v.*

MICHAEL MAGALLANES, *Respondent/Appellee*.

No. 1 CA-CV 14-0534 FC
FILED 2-18-2016

Appeal from the Superior Court in Navajo County
No. S0900DO20070239
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

COUNSEL

David J. Martin, Lakeside
*Counsel for Appellant*

Michael Magallanes, Phoenix
*Appellee*

**MEMORANDUM DECISION**

Judge Samuel A. Thumma delivered the decision of the Court, in which
Presiding Judge Kent E. Cattani and Judge Randall M. Howe joined.

**T H U M M A**, Judge:

¶1        Lyn Magallanes (Wife) appeals from the denial of her motion for new trial, claiming the superior court erred by allowing Michael Magallanes (Husband) to retain $3,000 in proceeds from a foreclosure; refusing to hold Husband in contempt for not timely paying Wife $1,500 in attorneys' fees and $850 for preparing a qualified domestic relations order (QDRO); ordering Wife to correct the QDRO; dividing Wife's previously-undisclosed retirement account as a community asset and awarding Husband $2,500 in attorneys' fees.[1] Because Wife has shown no error, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Wife filed a petition for dissolution of marriage in May 2007. The parties reached an agreement on the division of community property, which was incorporated in a February 2008 decree. Among other things, the decree required Husband to pay Wife $1,500 in attorneys' fees; awarded Wife one-half of Husband's retirement accounts to be divided by a QDRO; required Husband to pay for the cost of preparing the QDRO and required the sale of the community's home, with the net proceeds divided equally. In June 2011, Wife submitted a QDRO, which she amended early the next year.

¶3        In April 2012, Wife filed a petition for contempt claiming, as relevant here, that Husband did not comply with the decree because he failed to pay the $1,500 in attorneys' fees and failed to pay Wife's attorney $850 for the cost of preparing the QDRO. Husband responded by claiming he had paid the $1,500 in attorneys' fees and had offered to create the QDRO without cost to Wife. In a series of subsequent filings: (1) Husband claimed Wife had a previously-undisclosed retirement account subject to division as a community asset; (2) Wife claimed she was entitled to half of the $3,000 Husband had received from the foreclosure of a house owned as a community asset; and (3) both Husband and Wife sought attorneys' fees. The court set an evidentiary hearing for mid-February 2014, noting that

---

[1] Husband did not file an answering brief, "which could constitute confession of reversible error." *Nydam v. Crawford*, 181 Ariz. 101, 101 (App. 1994). Because this court is "reluctant to reverse based on an implied confession of error when . . . the trial court has correctly applied the law," *id.*, Husband's lack of answering brief will not be considered a confession of reversible error.

"with the number of motions here we should have a motions hearing and hear it all."

¶4            Both Wife and Husband testified at the hearing, and the court took the matters under advisement. In an April 2014 order, "having considered the pleadings, evidence, including testimony, demeanor of the witnesses and exhibits," the court found that (1) Husband was entitled to retain the $3,000 in proceeds from the foreclosure because he paid the mortgage, as well as expenses related to upkeep and to the attempted sale of the property; (2) Husband had paid Wife $1,500 in attorneys' fees as required; (3) Husband did not retain Wife's attorney to prepare the QDRO; (4) Wife's attorney was required to amend the QDRO to accurately reflect the date of filing for dissolution; (5) Wife's retirement account was acquired during marriage but had not been disclosed at the time of the decree and, accordingly, would be divided equally as a community asset; and (6) Husband would not be held in contempt. After finding Wife took unreasonable positions on several issues, the court awarded Husband attorneys' fees in an amount to be determined.

¶5            Wife moved for a new trial under Arizona Rule of Family Law Procedure 83(a)(1)(2016),[2] alleging she was denied a fair hearing because she did not have adequate notice of the issues that would be addressed at the hearing, and because the hearing was not conducted properly. Husband then filed a request for attorneys' fees. After full briefing, the court denied Wife's motion. The court found the issues in the April 2014 order were adequately developed in Husband's "brief pre-hearing statement for hearing on petition for contempt set for February 13, 201[4]," in a notice of potential witnesses and exhibits, and at the February 2014 hearing. The court also found Wife had waived any argument that the proceedings leading up to the April 2014 order were irregular or improper. Finally, the court awarded Husband $2,500 in attorneys' fees.

¶6            Wife filed a timely notice of appeal, and this court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12-2101(A)(1) and (5).

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

I.    **Wife Has Not Shown The Superior Court Erred By Denying Her Motion For New Trial.**

¶7         This court reviews the denial of a motion for new trial for an abuse of discretion. *Matos v. City of Phoenix*, 176 Ariz. 125, 130 (App. 1993); *State v. Spears,* 184 Ariz. 277, 287 (1996); *Pullen v. Pullen*, 223 Ariz. 293, 296 ¶ 10 (App. 2009) (noting superior court has broad discretion in ruling on motion for new trial).

A.    **Foreclosure Proceeds.**

¶8         Wife argues the superior court erred in allowing Husband to retain $3,000 in proceeds from the foreclosure and that the superior court did not consider Husband's benefit of living on the property rent-free before the foreclosure.

¶9         The February 2008 decree required the house to be sold, with the net proceeds to be divided equally between the parties. While the decree did not expressly mandate consideration of expenses related to the property, it did not preclude such consideration, and the court did not abuse its discretion by crediting father for expenses associated with the property. Evidence at the February 2014 hearing showed Husband lived at the home for 22 months, from the time of the petition for dissolution in May 2007 to March 2009, and paid all utilities and maintenance costs during that time. Although Wife testified Husband rented a second house on the property during some of this time, the record does not quantify any rental income received. In late 2008 and early 2009, Husband fell behind on mortgage payments and the foreclosure occurred in 2012.

¶10         Wife testified that, at the end of 2008, she lived in the second house for two months, paid all of the utilities and paid $1,200 to Husband to put towards the mortgage. When not living in the second house on the property, Wife claimed she paid $650 monthly to rent another residence. The record does not indicate a reasonable rental value for the marital house during this time. However, using $650 per month as a proxy, the potential rental value for the marital house for Husband's 22-month stay totaled $14,300, half of which ($7,150) would have been owed to Wife. Because Husband lived in the marital house "rent free," Wife argues the facts on the record do not "justify a complete offset" of Wife's $1,500 interest in the $3,000 foreclosure check.

¶11        Wife's argument, however, does not account for costs Husband incurred. The evidence from the February 2014 hearing indicated Husband made the mortgage payments totaling more than $26,000 during this period. Because the house was a community asset, Wife's share of those mortgage costs would have totaled more than $13,000, and Wife acknowledges that she only paid Husband $1,200 during this time for mortgage payments. Wife's responsibility for this expense significantly exceeded the foreclosure proceeds and rental value she claims should have been divided equally. Additionally, Husband testified that he paid for upkeep and spent significant time working to sell the house. Based on this record, the court did not err by allowing Husband to retain the proceeds of the foreclosure as an offset for these expenses. *Cf.* A.R.S. § 25-318(A) (requiring equitable, not exactly equal, division of community property).

### B.        Request To Hold Husband In Contempt.

¶12        Wife argues the superior court erred by refusing to hold Husband in contempt for failing to pay $1,500 in attorneys' fees specified in the decree. The court found "[t]estimony revealed that [Husband] paid [Wife's attorney] $1,500 in attorneys' fees ordered by the Court in the dissolution of marriage." Wife argues that because the fees were not paid until after she sought a contempt filing, the court erred in failing to find Husband in contempt.

¶13        The superior court had broad discretion in imposing consequences for any claimed lack of compliance with the decree. *See* Ariz. R. Fam. Law P. 92. Although Husband was late in paying the fees ordered, he ultimately paid and complied with the decree. Wife also did not establish undue prejudice stemming from the late payment. Accordingly, Wife has failed to show the superior court abused its direction by refusing to hold Husband in contempt.

### C.        Cost Of Preparing The QDRO.

¶14        Wife argues the superior court erred by denying her request that Husband pay $850 for preparing the QDRO. The decree did not specify the date by which Husband was to prepare the QDRO. Wife, through her attorney, offered to prepare the QDRO at Husband's expense, but Husband declined that offer. Wife then had her attorney create the QDRO, rather than demanding that Husband do so. *See* Ariz. R. Fam. Law P. 92. On this record, Wife has not shown the superior court abused its discretion by declining to hold Husband in contempt for failing to pay the cost of preparing the QDRO.

### D. Amending The QDRO And Dividing Wife's Retirement Account.

¶15 Wife argues she lacked proper notice and, as a result, was denied due process when the superior court ordered that her attorney amend the incorrect QDRO and divided the previously-undisclosed retirement account. Contrary to Wife's claim, however, when setting the February 2014 hearing, the court stated, "[w]ith the number of motions here we should have a motions hearing and hear it all." The court noted that the parties could submit evidence and call witnesses to "just do it all at once and get it all done." Husband's pre-hearing statement, filed several days before the February 2014 hearing, made plain that he intended to press these issues at the hearing. Moreover, as the superior court noted in denying the motion for new trial, Wife never objected to Husband's brief pre-hearing statement. Thus, the court did not err by considering and ruling on these issues.

¶16 Wife suggests that no evidence presented at the February 2014 hearing supported the order relating to Wife's retirement account. That order required "that the portion of [Wife's] retirement account acquired during marriage be divided pursuant to a QDRO as it was not properly disclosed by [Wife] at the time of divorce." Husband provided documentary evidence about the existence of the account and Wife does not dispute that she failed to timely disclose the account or that it existed before the entry of the decree. Thus, the court did not err by ordering Wife's attorney to amend the incorrect QDRO he had drafted or by ordering Wife's retirement account be divided equally as community property.

### E. Award of Attorneys' Fees

¶17 Wife argues the superior court erred by awarding Husband $2,500 in attorneys' fees because he did not submit an affidavit of financial information in support of his request. Husband requested attorneys' fees in his pre-hearing statement, but did not attach an affidavit reflecting his financial position. In mid-2010, however, both Husband and Wife filed affidavits of financial information. Wife suggests Husband was required to file an updated affidavit and that his failure to do so precluded a fee award under Ariz. R. Fam. Law P. 76(C)(2)(a) and 91(N)(3). In filings leading up to the February 2014 hearing, both Husband and Wife requested attorneys' fees but neither filed an affidavit of financial information. Nevertheless, the record does not indicate that either party's financial information changed significantly since their 2010 affidavits and, importantly, does not show that Husband's income materially increased. Accordingly, Wife has not shown

that the 2010 affidavits had become inaccurate by 2014 or that the court could not rely on the 2010 affidavits in awarding Husband $2,500 in attorneys' fees.

## CONCLUSION

**¶18** Because Wife has not shown error, the superior court's order is affirmed. In exercising this court's discretion, Wife's request for attorneys' fees on appeal is denied.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama