NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re Matter of:

NICHOLAS KRAKANA, *Petitioner/Appellant*,

*v.*

SUSANNE R. HAASS, *Respondent/Appellee*.

No. 1 CA-CV 17-0747 FC
FILED 10-11-2018

Appeal from the Superior Court in Maricopa County
Nos. FC2016-050246
FC2017-003246
(Consolidated)

The Honorable Jennifer Ryan-Touhill, Judge

AFFIRMED

COUNSEL

Horne Slaton, PLLC, Scottsdale
By Thomas C. Horne
and
Law Offices of Michael Welch, San Francisco, California
By Michael Welch
*Counsel for Petitioner/Appellant*

Brown, Naegle, Crider & Jensen, Mesa
By Kay A. Jones, Brad J. Crider
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

¶1        Nicholas Krakana (father) appeals from the family court's denial of his motion for new trial following the court's decision to grant parents joint legal decision-making authority and equal parenting time. Father further complains of the admission of certain documents. The appeal in this matter covers father's two petitions for legal decision-making authority (consolidated FC2016-050246 and FC2017-003246). Finding no error, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Father and Susanne R. Haass (mother) are the unmarried parents of two minor children born, respectively, in 2007 and 2009. Since early 2016, parents have resided separately, and their domestic relations situation has been contentious. For at least nine years father has been a full-time stay at home dad, living in one of his mother's (grandmother's) second homes, and being fully supported by her. Mother at the time of trial was attending real estate school.

¶3        Father, in 2017, unsuccessfully attempted to sever mother's parental rights [JS518301]. The court in the severance matter said it had serious concerns about their "extreme animosity towards each other" and that "the parents continue to fixate on vindicating themselves regardless of the suffering their children will experience in the process."

¶4        In the instant matter on appeal both parents requested, and were denied, sole legal custody of the children. Both sought supervised visitation as to the other. At the hearing, there was testimony as to mutual domestic violence, alcohol abuse, and inappropriate behavior in front of the children.

¶5        In a twenty-seven-page minute entry, the family court went through the Arizona Revised Statutes (A.R.S.) § 25-403 (2018) factors, and

eventually awarded parents joint legal decision-making authority.[1] It made ancillary orders, including directing the parties to engage in intensive counseling. It set a parenting and vacation schedule. It set child support, ordering father to pay $434.21 a month, based on the recurring $6,500 a month income attributable to him as a gift from grandmother. It ordered no past due child support. It ordered the parties to each read a book about co-parenting and write a book report.

¶6        Father filed an Arizona Rules of Family Law and Procedure (RFLP), Rule 83, motion for new trial or amendment of judgment as to court-ordered intensive counseling and the re-consideration of his misdemeanor domestic violence conviction. Father's motion was denied. Mother filed a motion for reconsideration seeking changes to the family court's orders as to vacation time, past child support, and intensive counseling. Mother's motion was denied. Father then filed a timely notice of appeal.

ISSUES

On appeal father argues the family court erred in:

1.  Denying his motion for new trial for sole decision making;

2.  Denying his motion to amend the judgment to vacate the requirement he take intensive counseling due to the cost; and

3.  Admitting exhibits from mother in violation of the pre-trial order.

DISCUSSION

¶7        On appeal, father asserts the family court erred in denying him sole decision-making "after finding that the mother caused the five-year-old daughter to take pornographic photos" of mother. Father asserts that the court could not have reached the decision it did, including making a best interests finding, given "this appalling parental misconduct."

¶8        We review child custody determinations under an abuse of discretion standard. *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003). The court has broad discretion in making this determination, and we will

---

[1] Under A.R.S. § 25–401(2) (2018), "'[j]oint legal decision-making means both parents share decision-making and neither parent's rights or responsibilities are superior except with respect to specified decisions as set forth by the court or the parents in the final judgment or order."

not disturb its decision absent a clear abuse of discretion. *In re Marriage of Diezsi*, 201 Ariz. 524, 525, ¶ 3 (App. 2002). "The trial court is in the best position to judge the credibility of the witnesses, the weight of evidence, and also the reasonable inferences to be drawn therefrom." *Goats v. A.J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 171 (App. 1971). Viewing the evidence in the light most favorable to sustaining the family court's findings, we determine whether the record reasonably supports the findings. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 5 (App. 1998).

**¶9** The family court did find that mother, in January 2015, had engaged her then five-year old daughter in taking two posed pictures that included her genitals. On appeal father wishes to draw our attention to this distasteful situation and to have us consider it dispositive.[2] That we will not do. By statute, the family court must – and did - consider many factors before determining legal decision-making authority. *See* A.R.S. § 25-403.

**¶10** A review of the record and the family court's minute entry provides a view of father that is, likewise, not flattering. The court found father engaged in "rude, bullying, disrespectful, argumentative, and inappropriate" behavior not only towards his immediate family and his mother, but also towards law enforcement. For example, an officer testified that during the course of an attempted service of an order of protection as to mother in 2016, father became unreasonably loud and profane in front of his daughter's gymnastics class, then sped off in his car and barricaded himself, grandmother, and the children in the house mentioned in the order of protection. Prior to speeding off, father mocked the officer and threw the order of protection out the car window. At the house, an officer arriving on the scene found mother laying in the driveway, crying hysterically, with red finger marks around her throat. A SWAT team was called and the situation was treated as a hostage situation. Police eventually entered and took father into custody. This situation resulted in a misdemeanor conviction for father. Mother, however, was not without blame as the family court in the severance matter found mother deliberately escalated the situation.

---

[2] On this issue, the family court said given the passage of time and no further evidence of similar behavior, it hoped the act was a "gross error in judgment that will not be repeated again." The court also noted that as alarming as the two photos were, father knew about the photos for over nine months before bringing them to the court's attention.

¶11      The family court further stated it:

> is concerned about Father's inability to control his anger and
> his apparent need to share his displeasure with anyone who
> will listen.  Father posted various statements to Facebook,
> including threats to sue Scottsdale Police …besmirched a
> judicial officer [in the severance matter], and eagerly
> anticipated severing Mother's parental rights.

During the hearing on this matter, the court had to admonish father as to
his inappropriate verbal actions, and otherwise demonstrating showing his
disapproval as to the officer's testimony.

¶12      Indeed, the family court found both parents had engaged in
domestic violence against the other.[3]  The record amply supports this
finding.  For example, there was a 2017 Department of Child Safety
document that stated the agency had "serious concerns that both parents
place the children at risk of domestic violence."

¶13      Along similar lines, there are emails in the record indicating
father may have assaulted grandmother on at least two occasions and that
he threatened to withhold the children unless she continued to fully
support his family financially, including providing a house, as she had been
doing for many years.  On one occasion, after grandmother moved to end
the support because it was draining her own finances, father stated "I want
to clarify something.  You want to evict you[r] grandchildren out of the
house they grew up in, sleep in, play in, eat, and where they have peace?
And still want to be in their lives? It's a yes or no answer."

¶14      Father argues that the court improperly disregarded evidence
of mother's alcohol abuse, including his testimony as to her "long-standing
and serious alcohol dependency and abuse."  The record below did contain
evidence as to mother's drinking.  On that issue, the court stated:

> The Court is concerned about Mother's denial of any alcohol
> issues.  While the Court gives little weight to Father's
> exaggeration of Mother's difficulties and claims of unfitness,

---

[3] The court considered a 2011 police report detailing police response to a
domestic situation where mother was apparently intoxicated and had
allegedly battered husband.  No conviction resulted.

the Court does see that Mother previously obtained a sponsor.

It went on to state that mother would have been more credible if, rather than flatly denying any alcohol issue, she had admitted "the need to work on herself." The court pointed out that during the dependency action in 2016, mother tested negative for the presence of alcohol on numerous occasions. Grandmother testified as to mother's drinking issues, however, the court found grandmother not credible as to mother's ability to parent. The family court heard and considered evidence on both sides of this matter. For this reason, the court did not abuse its discretion in finding insufficient evidence of an alcohol problem.

¶15        The record supports the family court's best interest finding. The court did not abuse its discretion in determining that joint legal decision-making here was preferable to giving either parent sole legal decision-making authority over the children.

¶16        Father next argues the family court abused its discretion in denying his motion for new trial regarding the intensive counseling requirement. Specifically, father asserts the counselors required by the court are too expensive – at least $8,000. He argues he has no income and his mother "was unwilling to provide the money for the program."

¶17        We review the denial of a motion for new trial for an abuse of discretion. *Pullen v. Pullen*, 223 Ariz. 293, 295, ¶ 10 (App. 2009). Under Arizona RFLP 83(A), a "judgment may be vacated and a new trial granted" for certain enumerated causes "materially affecting [a] party's rights." These causes include:

> 1. irregularity in the proceedings of the court or a party, or abuse of discretion, whereby the moving party was deprived of a fair trial;
>
> …
>
> 5. error in the admission or rejection of evidence or other errors of law occurring at the trial or during the progress of the action;
>
> 6. that the ruling, decision, findings of fact, or judgment is not justified by the evidence or is contrary to law.

*Id.*

6

¶18        Grandmother testified she just "loan[ed]" son money "as needed" and doesn't really keep track of these amounts or what he needed as far as income. Given that the family court established father had a gifted income of $6,500 a month, we cannot find that the denial of a motion for new trial was an abuse of discretion.

¶19        Finally, father complains that the family court allowed in certain evidence from mother that was not disclosed under the timelines outlined in the pretrial order. Father raised this issue before the family court and it was denied. As father notes in his brief, citing *Brown v. U.S. Fidelity & Guar. Co.*, 194 Ariz. 85, 88, ¶ 7 (App. 1998), we review the exclusion or admission of evidence under an abuse of discretion standard.

¶20        The three exhibits from mother that were admitted were the lengthy consolidated Scottsdale police report for the April 2016 SWAT team incident, and the packet of emails between father and grandmother mentioned above. Mother asserts that father already had possession of the cumulative police report from previous proceedings. She asserts, and we agree, that under *Hays v. Gama*, 205 Ariz. 99, 103, ¶ 18 (2003) the court should admit any relevant evidence which goes to the children's best interests.

¶21        As to the emails between father and grandmother, whether father has a history of abusing not only mother but also grandmother is relevant evidence which goes to the children's best interests. Additionally, as grandmother denied remembering such incidents, it would have been admissible not only as impeachment evidence, but relevant concerning grandmother's credibility. *See* Ariz. R. Evid. 801(d)(1)(A).

¶22        Mother seeks her attorneys' fees pursuant to A.R.S. §§ 25-324 and 12-349 (2018). Section 25–324(A) provides that:

> The court from time to time, after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings, may order a party to pay a reasonable amount to the other party for the costs and expenses of maintaining or defending any proceeding under ... chapter 4, article 1 of this title [regarding legal decision-making and parenting time].

Here, mother asserts that father acted unreasonably in contesting the family court's ruling. Mother argues that father has an extensive source of income from grandmother. We note that in the family court, each party bore its

own attorneys' fees.  In our discretion, we award mother attorneys' fees in an amount to be determined after compliance with ARCAP 21.

## CONCLUSION

**¶23**     For the above stated reasons, the family court is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA