NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

TASNEEM HALLOUM, *Petitioner/Appellee*,

*v.*

ADNAN HASASNEH, *Respondent/Appellant*

No. 1 CA-CV 18-0353 FC
FILED 4-16-2019

Appeal from the Superior Court in Maricopa County
No. FC2016-095376
The Honorable Rodrick Coffey, Judge

**AFFIRMED**

COUNSEL

Wees Law Firm LLC, Phoenix
By James F. Wees
*Counsel for Petitioner/Appellee*

Thomas A. Morton PLLC, Phoenix
By Thomas A. Morton
*Counsel for Respondent/Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge James B. Morse, Jr. and Judge Peter B. Swann joined.

---

**T H O M P S O N**, Judge:

¶1        This appeal stems from a highly acrimonious divorce proceeding. Adnan Hasasneh ("appellant" or "husband") appeals the trial court's decision denying his motion for new trial. Appellant also appeals the trial court's decision to preclude his expert's report and testimony as evidence, as well as the trial court's apportionment of marital assets and debts. For the following reasons we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Appellant and Tasneem Halloum ("appellee" or "wife") were married September 23, 2012 in Arizona. They share two children together, aged 4 and 2. While married, the couple owned and ran a furniture store located in Chandler, Arizona (the "business"). The couple also kept $500,000 cash in the marital residence and wife owned jewelry valued at $100,000, which was also kept in the home.

¶3        On September 7, 2016, following a physical altercation, wife sought an order of protection against husband, which required him to move out of the marital residence.[1]  Wife alleged that shortly after she filed the petition for dissolution of marriage (the "petition") in September 2016, husband began withdrawing money from the business accounts as well as moving inventory from the business to his father's furniture store. By January 2017 the business was completely shut-down. Wife also alleged that prior to her filing the petition, husband removed the $500,000 cash from the home. She further alleged that in October 2016, husband broke into the house and stole the $100,000 worth of jewelry. Husband denies all allegations.

---

[1] Husband also obtained an order of protection against wife.  Both parties appealed the orders of protection, however husband dropped his appeal, wife's is still pending. Wife obtained a second order of protection after the original expired.

¶4            In February 2017 the court appointed a third-party valuator to determine the value of the business prior to husband shutting it down. After both parties submitted two possible valuators the court blindly chose one, Susannah Sabnekar of Sabnekar & Associates, PLLC, ("Ms. Sabnekar"). She determined that the business was worth $1,245,000 which included over $500,000 in cash that husband had withdrawn from business accounts. Ms. Sabnekar also reported that husband had not been cooperative and had failed to provide her with several documents.

¶5            The court set an original date of October 26, 2017 for the evidentiary hearing. The court ordered that all disclosures be made by September 26, 2017 except for expert disclosures, which were due 60 days before the hearing. On September 25, 2017, husband filed an expedited motion to continue trial. The court granted the motion and rescheduled the evidentiary hearing for January 25, 2018. Husband then disclosed an expert report on November 3, 2017. Wife filed a motion to preclude admission of untimely report and testimony ("motion to preclude") and husband filed his response. The court granted wife's motion to preclude, finding that the motion for continuation did not automatically extend the disclosure deadlines.

¶6            The evidentiary hearing was held on January 25, 2018. The court found that husband's testimony regarding the cash and jewelry was not credible and therefore attributed those assets to him. The court then awarded the house to wife as well as half the value of the business after the cash and taxes were deducted from the total value. Husband filed a motion for new trial arguing that the court erred in precluding his expert's report and testimony; attributing the cash and jewelry assets to him; in ordering him to be solely responsible for the tax debt; and for attributing $20,000 per month income to him when calculating child support. The motion for new trial was denied. Husband appealed.

**DISCUSSION**

¶7            We review a trial court's order denying a motion for new trial for an abuse of discretion. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 254, ¶ 10 (2003). "The trial court has broad discretion in deciding whether to grant or deny a motion for a new trial, and we will not overturn that decision absent a clear abuse of discretion." *Pullen v. Pullen*, 223 Ariz. 293, 296, ¶ 10 (App. 2009) (citations and quotations omitted). We address each of appellant's arguments in turn.

## I. Expert Report and Testimony

**¶8** The trial court has broad discretion when ruling on disclosure and discovery matters and this court will not disturb an evidentiary ruling absent a clear abuse of discretion and resulting prejudice. *Marquez v. Ortega*, 231 Ariz. 437, 441, ¶ 14 (App. 2013); *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

**¶9** Husband first argues the court erred in precluding his expert report and testimony. Husband asserts that his disclosure was made 60 days before the continued trial date and therefore was timely under Arizona Rule of Family Law Procedure (ARFLP) 49(H). We disagree.

**¶10** The trial court issued an order setting disclosure deadlines in June 2017. The order clearly set the deadline for expert disclosures as 60 days before the hearing date of October 26, 2017. That meant the deadline for expert disclosure was August 27, 2017. Husband did not file his motion to continue until almost a month later on September 25, 2017. By that time, he had already missed the deadline for disclosing experts. Husband argues that pursuant to *Johnson v. Provoyeur*, 245 Ariz. 239 (App. 2018) the continuance of the trial necessarily continued the deadline for disclosure. However, in *Johnson*, when the trial court continued the trial it also expressly reset the disclosure deadline to 60 days before the continued trial date. *Id.* at 241, ¶ 5. The trial court in this instance did not make such an order, and a continuation of a trial does not automatically reset disclosure deadlines. *See State v. Superior Court*, 127 Ariz. 175, 176 (1980) (holding that the "resetting of a trial date does not change the date by which pretrial motions must be filed unless so ordered by the trial court"). If husband wished to extend the deadline for disclosures he should have filed a motion to extend said deadline, he did not do so.

**¶11** Although husband asserts that wife had notice that he would be using an expert and should have expected the report, that argument is not supported by the record. Husband points to the affidavit filed by the parties providing the court with names of possible neutral third-party valuators, which included the name of husband's expert he eventually used. However, this is not sufficient notice for wife to know husband would be filing a separate expert report. The names provided on that list were for the judge to blindly choose from. If we are to follow husband's logic he was also disclosing the other two names as his expert witness.

**¶12** Furthermore, husband has not demonstrated prejudice resulting from the court's decision precluding his expert report and

witness. The court appointed Ms. Sabnekar as a neutral third-party valuator for the business. She provided a detailed report of what the business was worth and the related debts. Additionally, husband testified regarding the business and his personal valuation of it. As such there was no prejudice and the trial court did not abuse its discretion.

## II. Division of Community Property

¶13 When dividing community property at dissolution, the trial court must divide the property and debts "equitably, though not necessarily in kind." Ariz. Rev. Stat. ("A.R.S.") § 25-318(A). The trial court has broad discretion in apportioning community property between parties at dissolution, and we will not disturb its allocation absent an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007) (citations omitted). The court commits an abuse of discretion if it "commits an error of law in the process of exercising its discretion." *Id.* (quoting *Kohler v. Kohler*, 211 Ariz. 106, 107, ¶ 2 (App. 2005)). We view the evidence in the light most favorable to upholding the trial court's ruling and will sustain the ruling if it is reasonably supported by the evidence. *Id.*

¶14 Husband argues that the trial court erred when it attributed the $500,000 cash and $100,000 in jewelry to him and then awarded the marital home to wife. Husband asserts that the trial court's determination that he had the cash and jewelry was not supported by the evidence and the trial court incorrectly relied on wife's testimony. We disagree.

¶15 The trial court is in the best position to weigh the evidence and judge the credibility of the parties and an appellate court should give deference to the trial court's conclusions. *See In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source*, 198 Ariz. 330, 340, ¶ 25 (2000) ("The trial court, not this court, weighs the evidence and resolves any conflicting facts, expert opinions, and inferences therefrom."); *see also Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004) (the trial court is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings").

¶16 Wife testified that husband kept a large sum of cash hidden in the home in a shoe box. Following a physical altercation between husband and wife, in which both party's fathers intervened, wife witnessed husband give his father an item wrapped in a shirt. Shortly after witnessing this act, wife overheard her father-in-law tell someone that he needed to leave because his car was "loaded," and he was worried about cash. Wife then went to check on the cash in its normal hiding place and it was gone.

¶17        Wife also testified that she had gold jewelry worth between $150,000 and $200,000 that she kept hidden in the house. Some of the jewelry was gifted from husband, who had been a gold dealer prior to the marriage, and others were family heirlooms. Wife testified that just before the hearing for temporary orders she saw husband driving around her neighborhood. She decided to take the children and leave the home. When she returned she saw that the front door was open, there was broken glass on the garage door and her jewelry was missing. Additionally, according to the police report, a neighbor saw a truck matching husband's parked in the driveway the weekend the jewelry was taken. Although husband testified that he did not take any cash or jewelry, the trial court specifically found that husband's testimony was not credible but wife's was.

¶18        The trial court therefore attributed $600,000 to husband in cash and jewelry, and then awarded the marital residence worth approximately $380,000 to wife. Because the evidence supports the trial court's determination that husband was in possession of approximately $600,000 of community property, it did not abuse its discretion in awarding wife the marital home, which was valued at less than the cash and jewelry.

## III.    Tax Debt

¶19        Husband next argues that the trial court erred in apportioning 100% of the tax debt to him. This assertion is a misstatement of the trial court's ruling. When dividing the business, the court specifically reduced the total value of the business by the $500,000 cash it awarded husband, as well as the $138,000 of taxes owed. The court then ordered husband to pay wife half the amount of that number. Thus, although husband is solely responsible for insuring the tax debt gets paid, wife's portion of the community debt was deducted from her share of the business. Had the court truly apportioned the entire tax debt to husband he would have been required to pay wife an additional $69,000 for her share of the business.

¶20        Furthermore, the evidence shows that the distribution of property was unequally favorable towards husband. Husband was awarded $600,000 worth of community property while wife received the marital home worth roughly $380,000. This means husband was awarded $220,000 more in community assets than wife. Thus, the trial court did not err in its apportionment of the tax debt.

## IV. Income Calculation

**¶21** Husband's final argument is that the trial court erred in its determination of his income by attributing his income at $20,000 per month. Again, we disagree.

**¶22** "Generally, we review child support awards for an abuse of discretion." *McNutt v. McNutt*, 203 Ariz. 28, 30, ¶ 6 (App. 2002) (citation omitted). We will accept the trial court's findings of fact unless they are clearly erroneous, but "draw our own legal conclusions from facts found or implied in the judgment." *Id.* (quotations omitted). However, "we review whether a court can attribute greater income to a party de novo, because it is an issue of law." *Pullen,* 223 Ariz. at 295, ¶ 9 (citation omitted). "Questions of what factors to apply to attribute income are legal questions." *Id.* (citation omitted). "[W]hether the trial court properly applied those factors is reviewed deferentially." *Id.* (citations omitted).

**¶23** Under A.R.S. § 25-320(5)(E) (2019), "if earnings are reduced as a matter of choice and not for reasonable cause, the court may attribute income to a parent up to his or her earning capacity." When determining whether to use actual income or earning capacity to calculate child support the trial court should consider five factors:

> (1) The reasons asserted by the party whose conduct is at issue; (2) The impact upon the obligee of considering the actual earnings of the obligor; (3) When the obligee's conduct is at issue, the impact upon the obligor of considering the actual earnings of the obligee and thereby reducing the obligor's financial contribution to the support order at issue; (4) Whether the party complaining of a voluntary reduction in income acquiesced in the conduct of the other party; and (5) The timing of the action in question in relation to the entering of a decree or the execution of a written agreement between the parties.

*Pullen*, 223 Ariz. at 297, ¶ 15 (citation omitted).

**¶24** Husband's 2015 income tax reports that he had an adjusted gross income of approximately $450,000. Additionally, when the court entered temporary child support orders in November 2016, it determined that husband's gross monthly income was approximately $29,000. After the temporary orders were filed husband shut down the business. He then began working at Dillard's making $2,300 per month. Although husband testified that the business took a significant downturn in 2016, and that he

would have had to move locations to keep the business open, the only evidence husband offered for proof of the downturn were notices of late and unpaid rent for the business. The court did not find his testimony credible.

¶25        The court applied the five factors enumerated in *Pullen,* and made findings as to each factor. As to factor one, the court found that husband deliberately shut down the business in order to minimize his financial obligations to wife. As to factor two, the court determined that wife and the children would be significantly impacted if it calculated husband's child support obligation using his retail sales income instead of husband's earning capacity when operating the business. When looking at factor three and four the court determined that wife's conduct was not at issue and that she did not acquiesce or agree to husband's unilateral decision to close the business. As to factor five, the court found that husband closed the business within a couple of weeks after wife sought temporary orders.

¶26        The court therefore found that husband's change in income was not justifiable or reasonable. Nonetheless, the court reduced husband's income by $10,000 to account for the possible increase in rent for the business and attributed $20,000 monthly income to husband. After calculating child support owed using the child support work sheet, the court determined husband owed approximately $2,000 per month. However, because wife's pretrial statement indicated that $1,085 was enough child support, the court reduced the monthly amount to $1,250.

¶27        The trial court properly applied the five factors in determining whether to attribute a greater income to husband and did not abuse its discretion in its determination of each. We therefore affirm the trial court's order attributing greater income to husband.

## V.    Attorneys' Fees

¶28        Both parties have requested attorney's fees and costs. We deny husband's request. We grant wife's request pursuant to A.R.S. § 25-324 (2019) in an amount to be determined upon compliance with Arizona Rule of Civil Appellate Procedure 21.

**CONCLUSION**

**¶29** For the foregoing reasons we affirm the trial court's ruling and grant wife's request for attorneys' fees.

