NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of

VINCENT JAMES ANDALORO,
*Petitioner/Appellee-Cross Appellant*,

*v.*

LORI LYNN ANDALORO,
*Respondent/Appellant-Cross Appellee*.

No. 1 CA-CV 19-0839 FC
FILED 2-9-2021

Appeal from the Superior Court in Maricopa County
No. FC2017-090132
The Honorable Michael S. Mandell, Judge

**AFFIRMED**

COUNSEL

Katz & Bloom, Phoenix
By Norman M. Katz
*Counsel for Respondent/Appellant-Cross Appellee*

Berkshire Law Office, PLLC, Tempe
By Keith Berkshire, Erica Leavitt, Alexandra Sandlin
*Counsel for Petitioner/Appellee-Cross Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge D. Steven Williams and Judge David D. Weinzweig joined.

_____

**T H U M M A**, Judge:

¶1         Lori Andaloro (Mother) and Vincent Andaloro (Father) appeal and cross-appeal from various rulings in their Decree of Dissolution in this high-conflict family court proceeding. Because they have shown no reversible error, the Decree is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2         Mother and Father married in 1991 and have seven children in common. Father petitioned for dissolution of marriage in January 2017. Two months later, the superior court issued temporary orders awarding Mother sole legal decision-making authority over their four minor children and ordering Father to pay $5,000 in monthly spousal maintenance and more than $1,800 in monthly child support. Father, who was earning more than $400,000 in average annual income as a pharmaceutical sales director, was granted limited parenting time with his minor children contingent on weekly negative alcohol tests.

¶3         Father's employment was terminated several months after the temporary orders hearing. He soon obtained another job in the same industry at about half his previous salary, but his mental health deteriorated over time and he was hospitalized in December 2018 after expressing suicidal ideations. Father then took a six-month leave of absence, which ended with another termination. The evidence suggested Father's savings were significantly depleted by the August 2019 trial.

¶4         Based on the contested trial evidence, the superior court made findings on the parties' earning abilities and issued orders for spousal maintenance, the division of community property and the payment of court-ordered fees, all reflected in the Decree.

¶5        The court denied both parties' requests for attorneys' fees, determining that none of the provisions of Arizona Revised Statutes (A.R.S.) section 25-324(B) (2021)[1] applied and citing various discovery disputes in concluding that "both parties [had] acted unreasonably." The court declined to sanction Father for alleged untimely disclosures and denied Mother's motion to reconsider the Decree.

¶6        This court has jurisdiction over the parties' timely appeals pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

¶7        Both Mother and Father challenge the Decree's provisions related to spousal maintenance, child support and division of property, with Mother also challenging the partial offset of a custody examiner's fees. Mother also argues the court erred in not awarding her attorneys' fees, in refusing to sanction Father for discovery violations and in summarily denying her motion to reconsider the Decree. Trial evidence is considered in the light most favorable to upholding the Decree, and all factual findings are sustained unless clearly erroneous. *Kohler v. Kohler*, 211 Ariz. 106, 107 ¶ 2 (App. 2005); *Sherman v. Sherman*, 241 Ariz. 110, 113 ¶ 9 (App. 2016); *see also In re Marriage of Gibbs*, 227 Ariz. 403, 410 ¶ 18 (App. 2011) ("The presence of contrary facts does not render a trial court's factual determinations clearly erroneous.").

## I.    The Parties Have Shown No Reversible Error in the Spousal Maintenance Award.

¶8        Mother argues the court misapplied the statutory spousal maintenance factors and misattributed to Father an annual income of $125,000 instead of $400,000. Father argues the court misattributed his income, asserting it should have been set at minimum wage. Father also claims the Decree impermissibly awarded "nominal" spousal maintenance and the court should have retroactively modified the 2017 temporary orders to reflect his actual income during the case. Each of these issues is reviewed for an abuse of discretion. *See Hammett v. Hammett*, 247 Ariz. 556, 559 ¶ 13 (App. 2019); *Amadore v. Lifgren*, 245 Ariz. 509, 513 ¶ 5 (App. 2018); *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348 ¶ 14 (App. 1998) (spousal

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

maintenance); *Pullen v. Pullen*, 223 Ariz. 293, 295 ¶ 9 (App. 2009) (attribution of income).

### A. Mother Has Not Shown the Court Abused Its Discretion in Awarding Spousal Maintenance.

**¶9**     The Decree requires Father to pay Mother $250 per month in spousal maintenance for ten years. In deciding spousal maintenance, the court first considers whether the spouse meets the eligibility requirements of A.R.S. § 25-319(A) and, if so, then applies "all relevant factors, including" 13 factors listed in A.R.S. § 25-319(B) to set the amount and duration. *Gutierrez*, 193 Ariz. at 348 ¶ 15. As the superior court noted, the purpose of spousal maintenance is "to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance." *Schroeder v. Schroeder*, 161 Ariz. 316, 321 (1989).

**¶10**     The Decree is the product of the court's consideration of the trial evidence and contains findings of fact as to all statutory factors. The court determined Father was not "incapable of working" despite his mental health issues. The court found that, although Mother was currently working as a teacher with an annual income of $37,000, she had a nursing degree and could make "substantially more" (between $60,000 and $70,000) were she to return to the nursing field after refreshing her education at a local community college. The court also found both parties had "relatively equal" financial assets and Mother would likely be able to "meet her reasonable needs" with the approximately $200,000 in cash and retirement proceeds she would receive under the Decree. Finally, the court determined Father would likely be better able to pay for the children's education, Mother had adequate health insurance and there was no evidence of waste of community assets.

**¶11**     Given the trial evidence and these findings, neither party has shown the award of spousal maintenance was an abuse of discretion. Mother argues it was error for the court to calculate spousal maintenance based on Father's most recent income ($125,000) rather than his historical average income (more than $400,000). But "formal attribution of income" is not required "for purposes of [spousal] maintenance." *Sherman*, 241 Ariz. at 115 ¶ 18 n.1; *see also* A.R.S. § 25-319(B). And contrary to Mother's assertion, the Decree did not expressly attribute an income to Father in setting spousal maintenance. Moreover, although Mother raises various other challenges to the findings on which the Decree's award of spousal maintenance rests, each of the findings which she disputes is substantially supported by admitted evidence and thus cannot be said to be clearly erroneous. *See Hurd*

*v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009) (an appellate court does not re-weigh conflicting evidence or re-determine preponderances of evidence).

> **B.**    **Father Has Not Shown the Court Abused Its Discretion in Awarding Spousal Maintenance.**

**¶12**    A spousal maintenance award rests on an assessment of the parties' past and present circumstances, not on speculations about the future. *See Sherman*, 241 Ariz. at 115 ¶ 19. Accordingly, a court errs by awarding "nominal" maintenance either (1) to an applicant who is not currently eligible, but may become eligible in the future, or (2) against a payor who cannot currently provide for the payor's reasonable needs, but may become able to do so in the future. *See Neal v. Neal*, 116 Ariz. 590, 592 (1977); *Sherman*, 241 Ariz. at 115 ¶ 19.

**¶13**    Father challenges the award of spousal maintenance — $250 per month to Mother for ten years — as erroneously nominal. As noted in the Decree, however:

> During Trial, Father *conceded* that Mother . . . should be awarded an amount to allow her the ability to modify [it] once Father is again able to obtain employment that again pays him a substantial salary. The Court agrees based on the current circumstances that this is reasonable for the parties. (Emphasis added.)

The trial transcript supports the Decree's finding that Father conceded the issue:

> FATHER'S ATTORNEY (to Father): And you've also suggested that spousal maintenance, although be set at zero, even be modifiable in case you get a job and you can again start paying that?
>
> MOTHER'S ATTORNEY: Your Honor, I would object. The law doesn't provide for that. Spousal maintenance set at zero, you can't modify it.
>
> FATHER'S ATTORNEY: Or set at some low amount.
>
> [. . .]

THE COURT: Understood.

Father's trial concession of the issue prevented the court from properly addressing it. Accordingly, the issue is waived and is not a valid basis for Father's claim of error on appeal. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, 349–50 ¶¶ 17–18 (App. 2007).

## II. The Parties Have Shown No Reversible Error in the Child Support Award.

¶14 The Arizona Supreme Court has adopted Child Support Guidelines, codified at A.R.S. § 25-320 app. (Guidelines) to provide standards in determining the amount of child support. The Guidelines' purpose is to establish "a standard of support for children consistent with their needs and the ability of parents to pay, and to make child support awards consistent for persons in similar circumstances." *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994). The Decree applied the Guidelines to attribute to Father the salary of his most recent employment ($125,000) and thereby determined his child support obligation to be $1,744 per month. Both Mother and Father challenge this award, which this court reviews for an abuse of discretion. *McNutt v. McNutt*, 203 Ariz. 28, 30 ¶ 6 (App. 2002).

### A. Mother Has Not Shown the Court Abused Its Discretion in Awarding Child Support.

¶15 Mother argues the court erred by basing its calculation of child support on Father's most recent employment, "attributing only $125,000 in income to Father," rather than his previous position, at which he made substantially more. The attribution of income is a fact-intensive inquiry that requires a court to consider "all the circumstances" to determine the outcome that would be in "the best interests of the child[ren]." *See Little v. Little*, 193 Ariz. 518, 523 ¶ 14 (1999) (quotations omitted); *see also Sherman*, 241 Ariz. at 113 ¶ 12 (upholding an attribution of income to an involuntarily unemployed parent); *see generally* Guidelines § 5(E). Whether a court may attribute greater income to a party, and the factors relevant to that inquiry, are questions of law reviewed de novo. *Pullen*, 223 Ariz. at 295 ¶ 9. But whether a court properly applied that law to the facts presented — as is at issue here — is reviewed for an abuse of discretion. *See id.*

¶16          The Decree reflects that the court engaged in the necessary inquiry, noting Father's expenses (including his child support) were being paid by his live-in girlfriend ("who earns a substantial income"), and that Father, despite his current unemployment and mental health issues, was capable of reacquiring a high-paying job. On this record, Mother has not shown the court's attribution of Father's income was an abuse of discretion.

**B.      Father Has Not Shown the Court Abused Its Discretion in Awarding Child Support.**

¶17          Father argues it was error for the court to calculate his child support obligation based on the salary of his most recent employment. Although Father concedes "the trial court has discretion under the Guidelines and A.R.S. § 25-319 to attribute income to a party involuntarily unemployed," he argues the court exceeded that discretion here by attributing him an income based on his previous employment "despite testimony that Father could not currently function at that level of employment." But the superior court, as finder of fact, properly weighs the evidence and makes determinations as to witness credibility. *See Gutierrez*, 193 Ariz. at 347 ¶ 13. And the court noted neither of Father's lay witnesses were qualified to opine that he was incapable of reassuming his most recent employment. On this record, the court's calculation of Father's child support obligation was not an abuse of discretion.

**III.     Father Has Not Shown the Court Abused Its Discretion by Declining to Retroactively Modify the Temporary Orders.**

¶18          Temporary orders addressing child support and spousal maintenance help ensure the parties' children — and the parties themselves — are provided for until entry of a decree. *See* A.R.S. § 25-315(E) (temporary orders should be issued "in amounts and on terms just and proper in the circumstances"). Courts have discretion to modify temporary orders as circumstances change and may apply such modifications retroactively. *See* A.R.S. § 25-315(F)(2); *Maximov v. Maximov*, 220 Ariz. 299, 301–02 ¶ 10 (App. 2009).

¶19          The April 2017 temporary orders required Father to pay $5,000 in monthly spousal maintenance and more than $1,800 in monthly child support. Father first moved to modify the temporary orders after he lost his job in September 2017, but repeatedly continued the hearing date and eventually asked that the issue be addressed at trial. Two months before the August 2019 trial, Father renewed his motion, expressly asking that the modification be retroactive. But, as noted in the Decree, Father

withdrew his renewed motion on the day of trial and, during his direct examination, asked the court to instead credit him for the payments he had made while the matter was pending. Because Father's withdrawal of his motion prevented the court and opposing counsel from properly considering it, he is barred from raising it on appeal. *See In re Marriage of Johnson*, 231 Ariz. 228, 235 ¶ 25 (App. 2012).

**¶20** Father also has not shown it was an abuse of discretion for the court to fail to retroactively modify the temporary orders sua sponte after Father withdrew his motion to that effect. Similarly, Father has not shown it was an abuse of discretion for the Decree not to credit him for payments made while the proceeding was pending. On this record, Father has shown no error by the temporary orders not being modified retroactively.

## IV. The Court Did Not Err in Dividing the Community's Property.

**¶21** Separate property — property acquired by either spouse (1) before the marriage or (2) during the marriage by gift, devise or descent — is assigned to that spouse. A.R.S. §§ 25-213(A), -318(A). Community property — property acquired by either spouse during the marriage except by gift, devise or descent — is equitably divided between the parties. A.R.S. §§ 25-211(A), -318(A). The superior court "is accorded great discretion in the apportionment of community assets." *Standage v. Standage*, 147 Ariz. 473, 476 (App. 1985). The court "is not required to make an absolutely equal distribution of the community property as long as it does not appear that the [] court's disposition of the community estate is inequitable or unfair." *Nesmith v. Nesmith*, 112 Ariz. 248, 252 (1975) (citation omitted); *see also* A.R.S. § 25-318(A) (court shall divide community property equitably). This court reviews the application of this authority for an abuse of discretion. *Neely v. Neely*, 115 Ariz. 47, 49 (App. 1977).

**¶22** As is relevant here, the court awarded each party the personal possessions and financial accounts in their respective names and divided the $185,000 remaining balance of the net proceeds of the sale of the marital residence approximately 85 percent to Mother and 15 percent to Father. Both parties challenge this division of the community. Mother claims she should have been awarded all of the net proceeds from the sale of the marital residence, while Father asserts those proceeds should have been equally divided. Mother also argues the court misallocated community funds held in bank accounts in Father's name.

### A. Neither Party Has Shown the Court Abused Its Discretion in Dividing the Community's Property.

#### 1. The Court Did Not Fail to Properly Apportion Bank Accounts Held in Father's Name.

**¶23** On appeal, Mother argues the court failed to properly apportion bank accounts held in Father's name, which totaled around $146,000 when he served the petition for dissolution but held almost no funds at the time of trial. She does not claim Father concealed, fraudulently disposed of or wasted these funds, but instead suggests, without evidence, that "Father kept all of these funds for himself and Mother never received her half."

**¶24** Three court days before trial began, Mother filed a pretrial statement stating "[t]he parties do not have very much with respect to property to be divided," adding "[t]he personal property has already been divided." Mother's filing listed just three items of property to be divided: proceeds from the sale of the house, a gun collection and Father's retirement accounts (separate from the bank accounts she claims on appeal). Although Mother listed statements for Father's bank accounts as exhibits, she did not assert that any funds attributed to those accounts needed to be apportioned at trial. Mother supplemented that filing the next day (two court days before trial), generally stating she "discovered that Father has substantial amounts of monies from his wage statements" held by two banks, including the bank where Father had the accounts she now challenges on appeal. In response, Father moved to strike Mother's pretrial statements as untimely. Although Father's motion to strike was denied, it is not clear that Mother's eleventh-hour filing preserved the issue. *Cf. Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007).

**¶25** Apart from waiver, Mother's challenge to the court's division of the community fails on the merits. Although the service of a petition for dissolution terminates the community — if the petition results in a decree — it does not alter the status of preexisting community property or community obligations. *See* A.R.S. § 25-211(B)(1). And here, the trial evidence supports a conclusion that disputed funds were used during the dissolution proceedings to satisfy community obligations, at least in part. Mother has not shown that it could not. Accordingly, and particularly in conjunction with the allocation of the proceeds from the sale of the marital residence, Mother has not shown the superior court erred by concluding that no reallocation of these funds was necessary.

### 2. The Court Did Not Err by Awarding Father a Portion of the Monies Remaining in Trust.

¶26 The parties sold their marital residence during the dissolution proceedings, receiving net proceeds of around $283,000, which was held in trust until the Decree issued. After Father's savings were depleted, he paid his spousal maintenance obligations from his portion of those proceeds. Based on that conduct and other findings, the court ordered Father to receive about $30,000 of the $185,000 remaining in the trust after all outstanding debts were satisfied, awarding Mother the remaining $155,000.

¶27 Mother argues the court's award of $30,000 to Father was error because she "is due an equalization payment from Father for the community funds held in the bank accounts in Father's sole name [] which were not divided by the court." However, as discussed above, the factual premise for this argument — that Mother is entitled to an equalization payment for community property used to satisfy community obligations — is incorrect. Accordingly, Mother has shown no error in the court's division of community property.

### 3. The Court Did Not Err by Unequally Dividing the Proceeds from the Sale of the Marital Residence.

¶28 Father challenges the award to Mother of most of the proceeds from the sale of the marital residence as "inequitably punish[ing] Father for involuntary mental health issues" and an improper substitute for a "higher amount of spousal maintenance." It is true that an unequal distribution of property cannot be based on reduced spousal maintenance, *Koelsch v. Koelsch*, 148 Ariz. 176, 182 (1986), as spousal maintenance is meant to be calculated after property is allocated, *see* A.R.S. § 25-319(B)(9) (when awarding spousal maintenance, a court must consider "[t]he financial resources of the party seeking maintenance, *including marital property apportioned to that spouse . . .*") (emphasis added). But as referenced above, the Decree's award of spousal maintenance to Mother did indeed reflect the community property it had awarded her. And in any event, the Decree's division of community property was, in fact, substantially equal.

¶29 Far from being error, the Decree's award to Mother of 85 percent of the $185,000 remaining in trust after debts were paid was necessary to offset the extent to which Father's sole and separate obligations had depleted the community's assets while the matter was pending. From 2018 to 2019, Father used $60,000 of the trust's balance to make 12 spousal maintenance payments of $5,000 each. But for these payments, the trust

would have held about $245,000 after payment of debts. This amount, equally split, would have yielded an award of around $122,500 to each party. The Decree's division of the remaining $185,000 approximately $155,000 to $30,000 in favor of Mother reflected this $60,000 used by Father and appropriately corrected it. Accordingly, Father has shown no error in the court's division of community property.

## V. Mother Has Not Shown the Court Abused Its Discretion in Ordering Her to Partially Offset Father's Court-Ordered Fees.

¶30 The superior court may order an investigation by an independent expert as to legal decision-making and parenting time, A.R.S. § 25-406(A), and may order one party to pay the investigator's fees subject to reallocation at trial, A.R.S. § 25-406(B). Here, as part of its 2017 temporary orders, the court ordered the parties to participate in such an investigation and, because of the parties' significant income disparity at the time, ordered Father to pay all of the costs subject to reallocation at trial. The parties complied; the evaluator's fees totaled $16,650, of which Father paid $14,500 and Mother paid $2,100. After trial, the court ordered Mother to reimburse Father $2,000 to partially offset his previous payments.

¶31 Mother argues the order requiring her to reimburse Father $2,000 was error because "it was Father's conduct which necessitated [the investigator's] appointment" and "[t]he investigation costs were [] increased by Father's . . . non-compliance." But the court's findings show that its reallocation of the costs reflected the relatively equal financial resources of the parties at the time of trial, not either party's relative misconduct. Recognizing the court has broad discretion when apportioning community property and debts, *Inboden v. Inboden*, 223 Ariz. 542, 544 ¶ 7 (App. 2010), Mother has not shown that discretion was abused here.

## VI. Mother Has Not Shown the Court Abused Its Discretion in Denying Her Attorneys' Fees.

¶32 A superior court may award attorneys' fees "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). Both Mother and Father requested — and were denied — attorneys' fees and costs. The denial of attorneys' fees is reviewed for an abuse of discretion. *Mangan v. Mangan*, 227 Ariz. 346, 352 ¶ 26 (App. 2011).

¶33        The court explained its denial of attorney's fees to both parties by reasoning (1) both had relatively equal financial resources at the time of trial and (2) both had acted unreasonably during the proceedings in various respects. Mother's appeal from this denial urges this court to re-weigh the evidence and reach the opposite conclusion, which this court will not do. *See Hurd*, 223 Ariz. at 52 ¶ 16. On this record, there is no showing that the superior court abused its discretion in denying the requests for fees.

## VII.    Mother Has Not Shown Reversible Error in the Denial of Her Other Motions.

¶34        Mother argues it was error to refuse to sanction Father for untimely disclosures and to deny her motion to reconsider the Decree.

### A.    Mother Has Not Shown the Court Abused Its Discretion by Refusing to Sanction Father.

¶35        Arizona Rule of Family Law Procedure 49 sets forth the disclosure requirements in family law matters; Rule 65 sets forth sanctions which may be imposed when a party disregards these disclosure requirements. "If a person fails to obey an order to provide or permit discovery, or fails to comply with a disclosure or discovery rule, the court *may* enter sanctions." Rule 65(b)(1) (emphasis added). Thus, the imposition of Rule 65 sanctions is discretionary, not mandatory.

¶36        Even so, Mother argues the court was obligated to sanction Father under Rule 65 for failing to timely disclose various employment records, banking statements, and affidavits of financial information. These records, Mother asserts, contained unfavorable information relating to the circumstances surrounding Father's termination, as well as Father's annual income before being terminated.

¶37        Rulings on disclosure issues, including whether to impose sanctions, are reviewed for an abuse of discretion. *Solimeno v. Yonan*, 224 Ariz. 74, 77 ¶ 9 (App. 2010); *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 426 ¶ 5 (App. 2003). Mother has not shown the court abused its discretion here. Following Mother's allegations of Father's disclosure violations, the court ordered Father to submit proof he had timely disclosed the disputed records, which Father did. The court found Father's proof of disclosure sufficient to show compliance with his Rule 49 disclosure obligations. Mother has not shown that determination — a prerequisite to a consideration of sanctions — was an abuse of discretion.

### B. Mother Has Not Shown the Court Abused Its Discretion by Denying Her Motion to Reconsider the Decree.

¶38 In family court, absent an order to the contrary, motions "must not exceed 17 pages." Rule 35(a)(2). Motions that do not substantially comply with Rule 35(a) may be summarily denied. Rule 35(b)(1). Rulings on posttrial motions are reviewed for abuses of discretion. *Staffco, Inc. v. Maricopa Trading Co.*, 122 Ariz. 353, 356 (1979).

¶39 Mother's motion to reconsider the Decree was 31 pages long; even excluding attachments, the motion exceeded the 17-page limit and Mother did not seek leave to file an over-lengthy motion. Accordingly, as a procedural matter, the superior court could summarily deny it. Rule 35(b)(1) (authorizing court to "summarily . . . deny a motion" that "does not substantially comply with" Rule 35(a)). And substantively, for the same reasons Mother has shown no reversible error on appeal, she has shown no reversible error in the summary denial of her motion to reconsider.

## VIII. Attorneys' Fees on Appeal.

¶40 Both parties request attorneys' fees on appeal pursuant to A.R.S. § 25-324. Having examined both the financial resources and the reasonableness of each party's positions, in the exercise of the court's discretion, the requests for fees on appeal are denied. In addition, because this decision affirms the Decree after an appeal and cross–appeal, neither party is awarded taxable costs on appeal.

### CONCLUSION

¶41 The Decree is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA